UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EMMANUEL FRANK NKANSAH, §<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>AMERICAN AIRLINES, INC.; §<br>RAFAEL MELGAR-MEJIA (#P1041); §<br>JUSTIN HORTON (#P0849); CARL BOYETT; §<br>CHARLES CINQUEMANI; DALLAS FORT §<br>WORTH AIRPORT BOARD; MARK A. §<br>MORGAN, Acting Commissioner of U.S. §<br>Customs and Border Protection; and JOHN §<br>DOES #4-10, §<br>§<br>Defendants. § | Civil Action No. 3:20-cv-3057<br><br><br><br><br><br><br><br><br><br><br><br>TRIAL BY JURY DEMANDED |

**COMPLAINT**

Plaintiff Emmanuel Frank Nkansah (hereinafter "Nkansah"), for his Complaint against Defendants American Airlines, Inc.; Rafael Melgar-Mejia; Justin Horton; Carl Boyett; Charles Cinquemani; Dallas Fort Worth Airport Board; and Mark A. Morgan, and alleges and states the following:

*Parties*

1.  Emmanuel Frank Nkansah is a citizen of the Republic of Ghana, resident alien of the of the United States and, is a resident of Denton County, Texas, and citizen of the Republic of Ghana.

2.  American Airlines, Inc. ("American Airlines" or "AA") is a Foreign For-Profit Corporation formed under the laws of the State of Delaware with its primary place of business in Ft. Worth, Texas.

Page **1** of **15**

3.     At all times relevant to this action, the Defendants, Rafael Melgar-Mejia and Justin Horton, were acting as constituent agents and/or employees in the course and scope of their agency or employment with DFW Airport Police agency. They are being sued in their individual capacity.

4.     At all times relevant to this action, the Defendant, Carl Boyett, was acting as constituent agent and/or employee in the course and scope of his agency with Customs/Border Protection. He is being sued in his individual capacity.

5.     DFW Airport Department of Public Safety Police ("DFW Airport Police") is a Texas law enforcement agency authorized and existing under the laws of the State of Texas. The DFW Airport Police is a fully empowered law enforcement agency that is certified by the state of Texas. Airport police officers are state-commissioned peace officers with full police authority, duties, and responsibilities. The DFW Airport Police has the responsibility and duty to enforce all local, state, and federal laws and to effect arrest and to provide for referral for prosecution of crimes to the city and county judicial systems. Charles Cinquemani was, at all times relevant to this action, the Chief of the DFW Airport Police. In that capacity, he was a supervisory official with final policymaking authority with respect DFW Airport Police activities and personnel including the investigation of Plaintiff. Chief Cinquemani's official policies and/or customs was a cause in fact of the deprivation of Plaintiff of his constitutional rights.  Chief Cinquemani is being sued in his individual and official capacities.

6.     Defendant, Dallas Fort Worth Airport Board, a governmental unit, whose principal office is located at 3200 E. Airfield, Dallas, Texas 75261, Dallas County, Texas. Defendant employed persons, including Rafael Melgar-Mejia and Justin Horton, and other officers who, in the course and

scope of their employment, were required to observe, watch over, and manage persons placed in custody at DFW Airport.

7. Defendant Mark A. Morgan is the Acting Commissioner of U.S. Customs and Border Protection, ("USCBP") a component of the Department of Homeland Security. Defendant Morgan has authority over CBP policies, procedures, and practices related to the treatment of American citizens entering the United States at border crossings and ports of entry.

8. John Does #4-10 are law enforcement officers who participated in the events described herein. They participated in the removal of Plaintiff from the airplane and escorted Plaintiff to the interrogation room. They are unknown at this time but are believed to work for the DFW Airport Police and U.S. Customs and Border Protection. These Defendants are being sued in their individual capacities.

### *Jurisdiction and Venue*

9. This action arises in part under the Constitution of the United States, particularly the Fourth, and Fourteenth Amendments to the Constitution of the United States, and under the laws of the United States, particularly the Civil Rights Act, Title 42 U.S.C. Section 1983. Plaintiff seeks damages for the deprivation of his federal rights, including: the right to be free from unreasonable searches and seizures of his person and places; for detaining him without reasonable suspicion to believe that he had committed, or was about to commit, a crime; and the right to engage in protected free speech. Plaintiff also pleads that he was discriminated against by American Airlines, Inc., and/its employees, or agents. Plaintiff also pleads various other federal laws.

10. The court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1331, 1343, and 1367 because they arise out of the same case or controversy.

11. Venue is appropriate under 28 U.S.C. §1391(e) in that the Northern District of Texas, Dallas Division.

### Factual Background

12. The incidents complained herein by Plaintiff occurred on or about October 7, 2018 inflight while onboard American Airlines Flight No. 51 from London, prior to deboarding, and after being removed from the airplane. Plaintiff's travel initially began in Ghana, Africa.

13. The first incident occurred while Plaintiff was seated and inflight. At some time after receiving food from an American Airlines flight attendant, a Caucasian woman, Plaintiff began to video his food with his cell phone in order to show his two young daughters what he ate on the airplane. His daughters frequently asked what he ate on the plane and how the food tasted.

14. Plaintiff was ordered to stop videoing because the flight attendant who claimed he was recording other passengers. Plaintiff explained that he was only videoing his food/tray, and no one was filmed. The flight attendant then loudly demanded that he obey her orders immediately. Plaintiff stopped videoing his food and put away his phone.

15. The flight attendant then demanded that he delete the video immediately. Plaintiff did not respond. She then returned to Plaintiff's seat sometime later and again demanded that he delete the video of his food. Plaintiff then deleted the video as ordered.

16. At some point thereafter, the female flight attendant began taking photographs of Plaintiff. She also videotaped his as well. Another flight attendant questioned the same female flight attendant and asked why she was taking pictures of Plaintiff. Thereafter, the same female flight attendant

returned to Plaintiff and took additional photographs of Plaintiff, as well as additional videos. While filming Plaintiff a second time, the female flight attendant threatened Plaintiff by stating, words to the effect, "I will show you."

17. Before the airplane landed at DFW Airport, the same female flight attendant, and/or the pilot after the female flight attendant requested, called authorities, and demanded that Plaintiff be arrested and taken off the plane upon arrival at DFW Airport. The female attendant lied to authorities and stated, among other things, that Plaintiff was being disrupted and videoing other passengers without their consent. At no time did Plaintiff raise his voice or was otherwise disruptive. Plaintiff never touched, pushed, or insulted anyone of the flight from London.

18. American Airlines employees' activities were intentional, unreasonable, and outrageous and did not involve an airline service—or said activities were unnecessary or too tenuously related to airline services but were centered on American Airlines contribution to Plaintiff's arrest and detention. Plaintiff was unfairly targeted because of his race—black—and alienage. Furthermore, American Airlines was negligent in allowing its employees to routinely contact and employ officials for matters not involving illegal activities or genuine safety matters and/or to punish and penalize passengers with arrest or the threat of arrest.

19. Immediately after landing—even before any passengers were allowed to deboard the airplane—Plaintiff saw approximately 10 officers or agents enter the airplane and come toward him down the aisle. He was then forcefully handcuffed and removed from the airplane. He had his arm twisted, his neck smashed, handcuffed, and taken off the plane, all before and in front of the passengers.

20. He was then taken while in handcuffs to an interrogation room at DFW Airport. While en route to the interrogation room, and while still handcuffed, he sustained further bodily injuries when he was thrown to the floor. At the time, Plaintiff asked why he was being arrested.

21. His phone was seized, and the authorities demanded that Plaintiff provide his password to access his phone.  In fear of further injuries, and believing he had not choice, Plaintiff provided his password. Plaintiff explained that he simply videotaped his food to show his young daughters. The officers responded that they were not told about videoing his food.  Plaintiff was never mirandized.

22. Plaintiff was then asked where the video was. He responded that he had deleted it because the flight attendant had demanded that he delete the "food" video.  However, his phone was further searched for the deleted video, which was ultimately retrieved and viewed. After the video was reviewed, the officers looked disappointed.  They then asked if there were any other videos. Plaintiff responded no. The phone was further searched.

23. At some point, Plaintiff saw his luggage brought into the interrogation room. His bags had already been searched without his consent, knowledge, or presence. Plaintiff was asked many additional questions about the contents of his luggage.  Finally, several officers returned to the interrogation room after discussing the matter and told Plaintiff that he could leave.

24. Plaintiff attempted to question the officials about their actions. They became defensive and forceful in their tone stating to just leave the area.  The officials further stated that they did what American Airlines instructed them to do. Plaintiff was then escorted from the area and bypassed the normal immigration and custom routine.

25. During this ordeal, Plaintiff was thrown to the floor twice: once on or near the plane and once while taken to the interrogation room.  As the result of the incident, he sustained serious bodily

injuries to his head, neck, and back, among other places.

26. Each of the Defendants caused, and are responsible for, the unlawful conduct described herein, and resulting injuries by, among other things, personally participating in the unlawful conduct, acts or omissions, or acting jointly with the others who did so; by authorizing, acquiescing in or setting into motion policies, practices, plans or actions that led to the unlawful conduct; by failing and refusing with deliberate indifference to Plaintiff's rights, to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their discretion and control, including failing to take remedial or disciplinary action.

27. Defendants were deliberately indifferent to protecting Plaintiff from harm and failed to prevent said harm, even though they were within a small area to observe and assist. Further, they failed to provide urgently needed medical care, and their conduct was unreasonable when they failed to protect Plaintiff from harm.

### *Causes of Action*

### **False Arrest/Unlawful Seizure/False Imprisonment/Excessive Force**

28. Plaintiff repeats and realleges above paragraphs, as if expressly set forth at length. The law enforcement conduct identified herein constitutes a violation of Plaintiff's civil rights by subjecting him to unreasonable arrest, false imprisonment, excessive force, and/or unlawful detention. Defendant law enforcement officers are "persons" for purposes of 42 U.S.C. § 1983, and, at all times relevant to this cause of action, acted under color of state law. Further, Plaintiff's constitutionally protected places, things and effects were seized and searched within the meaning of the Fourth and Fourteenth Amendments by Defendant law enforcement officers.

29. Defendants took no affirmative acts to intervene, aware that there was no probable cause to believe the crimes alleged had been committed much less that Plaintiff had committed them.

30. At no time did these Defendants seek or apply for a warrant nor could they as probable cause did not exist to support any such application. These defendants knew that the requisite grounds did not exist to justify the arrest, detention or search of Plaintiff and his belongings.

31. A Fourth Amendment <u>seizure</u> occurs when an officer by means of physical force or show of authority has in some way restrained the liberty of a citizen. Restriction of freedom to leave by physical restraint or by sufficient show of authority effects a seizure. The unreasonable seizure of Plaintiff was unconstitutional. Additionally, Plaintiff was subject to a false arrest. The use of firearms, handcuffs, and/or other forcible techniques exceed the scope of an investigative detention and enter the realm of an arrest. An unlawful detention becomes an arrest when a reasonable person would believe that he is under arrest. Factors to be considered to determine if a dentition is an arrest are the intrusiveness of the stop, the aggressiveness of the police methods used, how much a plaintiff's liberty was restricted, the justification for the use of the tactics employed, and whether the police had a sufficient basis to fear for safety so as to warrant the action taken.

32. As a result of the Defendants' conduct, Plaintiff was subjected to an unconstitutional search and seizure, excessive force, and the denial of due process in deprivation of his Fourth and Fourteenth Amendment rights. As a direct and foreseeable consequence of the deprivation of Plaintiff's rights, he suffered the loss of privacy, loss of property, loss of liberty, physical harm, humiliation, bodily injuries, public condemnation, emotional trauma, irreparable harm to his reputation, and economic loss, including but not limited to the costs of retaining counsel, investigators and other professionals reasonably necessary to prove his innocence.

33.     Plaintiff was forcefully handcuffed, forcefully escorted while handcuffed to an interrogation room. While in custody of the Defendants, Plaintiff was injured as the result of the actions of the law enforcement Defendants.

### Abuse of Process and Conspiracy in Violation of 42 U.S.C. § 1983

34.     All of the foregoing allegations are incorporated here by reference. Defendants, individually and in concert together during the course and scope of her employment with DFW Airport Police and Customs/Border Patrol, obtained the removal of Plaintiff, subjecting Plaintiff to unconstitutional searches and seizures, through an extortionate perversion of legal process unrelated to the purposes for which arrests or detentions were intended. For example, the Defendants conspired to obtain the detention and arrest of Plaintiff for the unauthorized purposes of:

    A.   Stigmatizing Plaintiff in the local community and in the eyes of people in the Dallas metroplex; and
    B.   Generating and then galvanizing the public condemnation of Plaintiff;

35.     Defendants, acting individually and in concert, fabricated a false and incendiary record directed to Plaintiff. Intentionally lied about the reasons for detaining, arresting, and searching the Plaintiff. As the result various official reports were generated with reflects the actions taken and identifies Plaintiff.

36.     By virtue of Defendants' abuse of the processes, Plaintiff was stigmatized in the eyes of the local community. By design, the Defendants used the detention, arrest, false imprisonment, and search of Plaintiff for the unauthorized purpose of subjecting Plaintiff to extortionate pressures and extraordinary humiliation, fear, shame, and distress.

37. As a result of the wrongful conduct of Defendants, the Plaintiff was seized, detained, and searched without probable cause or reasonable suspicion in deprivation of his rights guaranteed by the United States Constitution in particular the Fourth and Fourteenth Amendments thereto.

38. As a direct and foreseeable consequence of these deprivations, Plaintiff had suffered the loss of privacy, loss of property, loss of liberty, physical and bodily harm, emotional trauma, and irreparable harm to their reputations, and economic loss, including but not limited to the costs of retaining counsel, experts, investigators and others in order to defend himself against the false claims and fabrication of evidence throughout the investigation of Plaintiff.

## **Conspiracy**

39. Plaintiff repeats and realleges the above paragraphs as if expressly set forth at length. For an extended period of time, American Airlines, individually and through their agents, officers or employees, engaged in a concerted effort with themselves, and were willful participants in the joint action to implement to punish Plaintiff, as discussed above, and to have Plaintiff forcefully removed from Flight 51, which concerted effort constitutes a conspiracy to violate Plaintiff's civil rights and other rights and to damage Plaintiff for which Plaintiff seeks redress.

40. Further, the actions and omissions of Defendants were taken with deliberate indifference to and deliberate disregard for the known Constitutional rights of Plaintiff as guaranteed by the laws of the United States. Still more, the actions and omissions of Defendants were willful, wanton, and recklessly exhibited a conscious disregard for the safety of Plaintiff in failing to keep him from injury and harm.

## Due Process and Equal Protection

41.     All allegations made heretofore in the above paragraphs are incorporated herein by reference as if made in this paragraph. Plaintiff will also show that the DFW Airport Police Department's actions, procedures and policies were actions under color of law in derogation of Plaintiff's clearly established right to enjoy and practice freedom of speech under the U.S. Constitution, and obtain due process.

42.     The Equal Protection Clause of the Fourteenth Amendment directs states to treat all persons similarly situated alike. The Equal Protection Clause is violated by intentional discrimination, which implies that the decision-maker singled out a particular group for disparate treatment and selected a course of action, at least in part, for the purpose of causing an adverse effect on an identifiable group. A governmental defendant violates the Equal Protection clause when its action classifies or distinguishes between two or more relevant persons or groups. Also, a protection claim may be brought by a "class of one," where the Plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Here, Plaintiff is a member of an identifiable group, black, and a citizen of Ghana. Additionally, Plaintiff alleges that he had been intentionally treated differently from others similarly situated, and that there was no rational basis for the difference in treatment.

## Breach of Contract

43.     Plaintiff realleges and restates the matters set forth in the above paragraphs as if set forth in full herein. The relationship between Plaintiff and American Airlines was, in part, contractual in nature. The terms of the contract were set forth between them in the contract relating to carriage. Plaintiff substantially performed all of his contract obligations with American Airlines. American

Airlines did not perform its contractual obligations to Plaintiff in at least the following respects: by terminating him without cause and by fabricating the reasons for removal. The breach of contract caused injury to Plaintiff and resulted in damages.

## Negligence

44.     Plaintiff incorporates the foregoing allegations by reference herein. American Airline and DFW Airport Board's employees, during the course and scope of their employment which was ratified by AA and DFW Airport Board, owed Plaintiff a duty of care to warn and otherwise affirmatively act to protect Plaintiff from harm by virtue of unique relationships that existed. The special relationship is predicated upon unique features of the relationship between the Defendants and the Plaintiff. These Defendants breached the duty of care it owed to the Plaintiff as alleged herein and by, for example, failing to act with respect to the known and foreseeable dangers relating to the allegations.

## Negligent Retention

45.     Plaintiff reallages and restates the matters set forth in the above paragraphs as if set forth in full herein. American Airlines' conduct as set forth herein constitutes the tort of negligent retention for the keeping and safeguarding of employees despite its knowledge that they had engaged in similar conduct previously and despite it knew or should have known that the conduct by them as alleged herein was improper and contrary to the polices and procedures of American Airlines.

46.     The negligence of American Airlines was willful and malicious with reckless disregard for Plaintiff's rights and thus Plaintiff seeks the recovery of exemplary damages in an amount within the jurisdictional limits of this Court.

### Negligent Training and Supervision

47. Plaintiff reallages and restates the matters set forth in the above paragraphs as if set forth in full herein. American Airlines' conduct as set forth herein constitutes the tort of negligent training and supervision of its employees. As a proximate result of American Airlines' actions, Plaintiff has been damaged. The actions of American Airlines were willful and malicious, with reckless disregard for Plaintiff's rights, and thus Plaintiff seeks the recovery of exemplary damages in an amount within the jurisdictional limits of this Court.

### Violations of Other Federal Laws

48. Plaintiff reallages and restates the matters set forth in the paragraphs as if set forth in full herein.

49. Defendants violated certain Federal Statutes and Civil Rights Laws which prohibit discrimination on the basis of a person's race, color, national origin, religion, and/or sex, including, but not limited to, 42 U.S.C. §1981. *In the alternative*, Plaintiff alleges that Articles 17, 19, and 25 of the Warsaw Convention were violated.

### Exemplary Damages

50. Plaintiff reallages and restates the matters set forth in the paragraphs as if set forth in full herein.

51. American Airlines acts and omissions were committed with malice or reckless indifference to Plaintiff's rights. In order to punish it for engaging in unlawful practices and to deter such actions and/or omissions by it, it should be assessed exemplary damages.

### Attorney Fees

52.     Because of the Defendants' actions, it was necessary that Plaintiff secure the services of the undersigned attorneys to enforce and protect his rights and therefore the Defendants should be ordered to pay reasonable and necessary attorney's fees as follows:

    a.     for the preparation and trial of this lawsuit; and

    b.     an amount equal to all costs and disbursements, including expert witness fees.

### Compensatory Damages

52.     As a direct and proximate result of Defendants' wrongdoing, Plaintiff has suffered and will suffer the following economic losses:

    a.     emotional and physical pain and injury;

    b.     inconvenience;

    c.     prejudgment interest;

    d.     loss of enjoyment of life;

    e.     past mental anguish;

    f.     future mental anguish;

    g.     reasonable costs of medical care, past and future;

    h.     loss of past earnings;

    i.     loss of future earnings and earning capacity;

    j.     injury to reputation; and

    m.     consequential and incidental costs; .and

    n.     public documents sanitized or removed.

## Conditions Precedent

53. All conditions precedent have been performed, occurred, or waived.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that judgment be entered in his favor and against Defendants, jointly and severally, for damages set forth above; exemplary damages as allowed by law; together with interest as allowed by law; and attorney's fees, costs and expenses, as set forth above; and to be awarded such other and further relief to which he may be entitled at law or in equity.

The Law Office of Michael P. Kelly

By   */s/Michael P. Kelly*
Michael P. Kelly
Texas Bar No. 11227280
P.O. Box 150589
Dallas, TX 75315
Telephone:  (214) 821-7255
Facsimile:  (214) 821-7251
e-mail:  **mptkelly@sbcglobal.net**

Attorney for Plaintiff

**TRIAL BY JURY DEMANDED**